JAMES HOOPER, JR. v. LIBERTY MUTUAL INSURANCE COMPANY

No. 8617SC489

(Filed 3 March 1987)

**Insurance § 149; Master and Servant § 69.3— workers' compensation — settlement not reached — action for bad faith refusal — dismissal proper**

The trial court correctly granted defendant's motion for dismissal under N.C.G.S. 1A-1, Rule 12(b)(6) of plaintiff's claims for a bad faith refusal to pay benefits and for unfair and deceptive trade practices where plaintiff had pursued a claim for a back injury under the Workers' Compensation Act; payments had been made by defendant and accepted by plaintiff; the parties had not reached a mutually acceptable agreement to conclude the case; and plaintiff's only factual allegations consisted of letters from defendant which represented nothing more than an effort to settle the claim.

APPEAL by plaintiff from *Wood, Judge*. Order granting defendant's motion to dismiss the complaint entered 12 December 1985 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 20 October 1986.

*Bethea and Sands, by Alexander P. Sands, III and J. Michael Thomas, attorneys for plaintiff appellant.*

*Hutchins, Tyndall, Doughton & Moore, by Richard Tyndall and Laurie H. Woltz, attorneys for defendant appellee.*

ORR, Judge.

Plaintiff attempts to raise the single issue of whether an employee can maintain an action against his employer's insurer for bad faith refusal to continue the payment of benefits.

However, the pleadings and record in the case *sub judice* are such that we need not address that question. We instead address the basic issue of whether plaintiff's complaint states a claim upon which relief can be granted. It did not, and accordingly, we affirm the trial court's dismissal.

From 1957 to 1969 plaintiff James Hooper, Jr. worked as a dock worker for J. P. Stevens & Co.; from 1969 to 14 October 1984 he worked for Stevens as a truck driver. During the course and in the scope of that employment, Mr. Hooper apparently suffered several accidental injuries to his back. A letter dated 14 September 1984 from Liberty Mutual Insurance Company, the employer's insurer, to Mr. Hooper's attorney, and incorporated in plaintiff's complaint, disclosed that Liberty Mutual had paid Hooper five weeks of temporary total disability at a compensation rate of $158.00 per week. The letter noted that Mr. Hooper had been paid compensation in accord with a 10 percent permanent partial disability rating to his back as well as medical expenses.

In the September 14th letter, the adjuster states that plaintiff has been given a 17 percent permanent partial disability rating; that 15 percent of this rating has been paid; and that the insurer was "waiting for Mr. Hooper to sign the agreement forms to pay the remaining 2%." In oral argument, counsel for Liberty Mutual explained that this phrase referred to "Form 21," the "Agreement for Compensation for Disability" form. To be binding this agreement must be signed by both parties and approved by the Industrial Commission. N.C.G.S. § 97-82 (1985). The letter further offers to increase the cash payment from $1,297.32 to $2,000.00 if a clincher agreement was signed.

A second letter dated 19 October 1984 from Liberty Mutual remarked upon Hooper's response to the September letter (the response is not in the record before this Court), in which Mr. Hooper apparently refused to sign the clincher agreement. Likewise, there is no indication that plaintiff signed the Form 21 agreement either. The October letter stated "it is our position that we are not responsible for the claimant's underlying arthritic condition[,] only the aggravation that his injury caused." It further stated that Liberty Mutual "would not be willing to pay anything further except by clincher agreement on this case," leaving the $2,000.00 offer to settle still open.

At this point, the dealings of the parties had been entirely within the scope and practice of the Workers' Compensation Act. Payments had been made by defendant and accepted by plaintiff based on agreed upon disability ratings. The parties, however, had not reached a mutually acceptable agreement to conclude the

case either through the signing of a Form 21 Agreement or a clincher agreement.

The second letter motivated Mr. Hooper to file a complaint alleging that the insurer's actions as set forth in the two letters constituted a bad faith refusal to pay benefits and unfair and deceptive trade practices in contravention of N.C.G.S. §§ 58-54.4(11) and 75-1.1. Plaintiff asked for compensatory and punitive damages. The trial court granted defendant's motion pursuant to Rule 12 of the North Carolina Rules of Civil Procedure to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted.

> Dismissal of a complaint is proper under the provisions of Rule 12(b)(6) of the North Carolina Rules of Civil Procedure when one or more of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E. 2d 240, 241 (1981); *Schloss Outdoor Advertising Company v. City of Charlotte*, 50 N.C. App. 150, 272 S.E. 2d 920 (1980).

*Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E. 2d 222, 224 (1985).

We turn now to an examination of plaintiff's allegations of fact as set forth in the complaint. The letters of 14 September and 19 October are incorporated into the complaint and comprise the only factual allegations upon which to judge the merits of plaintiff's complaint. The facts set forth in the letters and taken as true, represent nothing more than an effort to settle a claim by an insurance carrier. Even in the 19 October letter, the facts on their face only show that defendant had reevaluated the claim and determined that there was no responsibility for "claimant's underlying arthritic condition." Despite declining to pay additional compensation, the defendant still left open the settlement of the case for $2,000.00 if a clincher agreement was signed. No cause of action rests upon those factual allegations.

Beyond that, plaintiff's complaint merely reaches conclusions rather than alleging facts to sustain a cause of action. For pur-

poses of a Rule 12(b)(6) motion, ". . . the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E. 2d 161, 163 (1970).

Of particular note is that plaintiff had proceeded under the Workers' Compensation Act for an extended period of time. However, upon reaching the point where an agreement could not be reached, plaintiff failed to pursue the appropriate steps under the Workers' Compensation Act. Instead plaintiff improvidently pursued a civil action which could not be sustained upon the particular facts alleged, although under certain circumstances a bad faith claim against an insurer could state a claim for relief. For the above stated reasons, the trial court's dismissal of plaintiff's claim is

Affirmed.

Judges WELLS and BECTON concur.