MADELYN B. BROWN, Administrator of the Estate of ROGER MACK BROWN, III, Plaintiff v. FRIDAY SERVICES, INC. (Formerly known as Friday Temporary Services, Inc.), G.M. KASSEM, INC. and WESTINGHOUSE ELECTRIC CORPORATION, Defendants

No. COA94-1116

(Filed 15 August 1995)

**1. Labor and Employment § 182 (NCI4th)— wrongful death— hidden danger claim defeated by complaint**

In a wrongful death action where plaintiff alleged that decedent was assigned by defendant temporary service to defendant roofing contractor and fell through a skylight while working on a roof owned by defendant Westinghouse, plaintiff's complaint by implication alleged that defendant roofing contractor knew about the dangers posed by the skylight and thus disclosed a fact which defeated her "hidden danger" claim against defendant Westinghouse.

**Am Jur 2d, Independent Contractors §§ 24 et seq.**

**2. Labor and Employment § 192 (NCI4th)— fall through skylight—no allegation that roofing work was inherently dangerous**

There was no merit to plaintiff's contention that Westinghouse, as owner of the roof in question, had a nondelegable duty to a roofing contractor's workers to see that they were provided a safe place to work, since a property owner is not required to provide an independent contractor's workers with a safe place to work unless the work being done is inherently dangerous, and plaintiff made no such allegation.

**Am Jur 2d, Independent Contractors §§ 40 et seq.**

**3. Workers' Compensation § 62 (NCI4th)— employer engaged in misconduct substantially certain to cause serious injury or death—insufficiency of complaint**

Plaintiff's allegations that defendant temporary service did not screen decedent to determine if he had experience in roofing work at high elevations, did not properly train him, and failed to provide him with a safe place to work did not sufficiently state a claim that defendant engaged in misconduct knowing that it was substantially certain to cause serious injury or death.

**Am Jur 2d, Workers' Compensation §§ 75 et seq.**

**What conduct is willful, intentional, or deliberate within workmen's compensation act provision authorizing tort action for such conduct. 96 ALR3d 1064.**

**4. Workers' Compensation § 45 (NCI4th)— decedent as loaned servant—claims barred by exclusivity provisions of Workers' Compensation Act**

At the time of his death, decedent was performing work as a loaned servant on behalf of defendant roofing contractor, and all claims against the contractor were therefore barred by the exclusivity provisions of the Workers' Compensation Act.

**Am Jur 2d, Workers' Compensation § 231.**

Appeal by plaintiff from judgments entered 25 July 1994 and 27 July 1994 by Judge W. Steven Allen, Sr. in Davidson County Superior Court. Heard in the Court of Appeals 6 June 1995.

*Peebles & Schramm, by John J. Schramm, Jr., for plaintiff-appellant Madelyn B. Brown.*

*Petree Stockton, L.L.P., by Edwin W. Bowden and Christopher C. Fox, for defendant-appellee Westinghouse Electric, Corp.*

*Roberts Stevens & Cogburn P.A., by Steven W. Sizemore, for defendant-appellee Friday Services, Inc.*

*Maupin Taylor Ellis & Adams, P.A., by Karon B. Thornton and Thomas W.H. Alexander, for defendant-appellee G.M. Kassem, Inc.*

WYNN, Judge.

This appeal arises from a wrongful death action brought on behalf of Roger M. Brown, III ("decedent") who fell through a skylight

while working on a roof owned by defendant Westinghouse Electric Corporation ("Westinghouse"). The decedent was employed by defendant Friday Services, Inc. ("Friday Services"), a temporary employment agency which in turn assigned the decedent to work for defendant Kassem, Inc. ("Kassem"), a roofing contractor. Kassem then directed the decedent to work on a roof at the Westinghouse plant in Asheville.

On 22 December 1993, plaintiff Madelyn B. Brown, administratrix of the decedent's estate, filed a wrongful death action against defendants. Defendants Westinghouse and Friday Services moved to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and defendant Kassem moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The trial court granted defendants' motions. Plaintiff appealed.

---

I.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is to test the legal sufficiency of the complaint. *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970). Our Supreme Court has stated:

A complaint may be dismissed on motion filed under Rule 12(b)(6) if it is clearly without merit; such lack of merit may consist of an absence of law to support a claim of the sort made, absence of facts sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim.

*Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1981) (citing *Hodges v. Wellons*, 9 N.C. App. 152, 175 S.E.2d 690 (1970)). As such, a motion to dismiss is properly granted when it appears that the law does not recognize the plaintiff's cause of action or provide a remedy for the alleged. Thus, the question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 355 S.E.2d 838 (1987).

A. WESTINGHOUSE

[1] Plaintiff first contends that the trial court erred by granting Westinghouse's Rule 12 (b)(6) motion. We disagree.

Specifically, plaintiff argues that Westinghouse had a common law duty not to expose decedent to hidden dangers. Hidden dangers are considered dangers that are unknown to the independent contractor, but that are known or should have been known to the owner. *Wellmon v. Hickory Construction Co. Inc.*, 88 N.C. App. 76, 80, 362 S.E.2d 591, 593 (1987).

> The owner is not responsible to an independent contractor for injuries from defects or dangers of which the contractor knew or should have known, "but if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this, he is liable for resultant injury."

*Deaton v. Board of Trustees of Elon College*, 226 N.C. 433, 438, 38 S.E.2d 561, 565 (1946) (quoting *Douglass v. Peck & L. Co.*, 89 Conn. 622, 629, 95 A.2d 22, 25 (1915)).

In order for the skylight to have been considered a hidden danger, neither decedent nor Kassem could have been aware of its existence. Plaintiff, however, refutes the notion that Kassem was unaware of the danger posed by the skylight by alleging in her complaint that Kassem failed to erect warning lines around the skylight. "Dismissal of a complaint is proper under the provisions of Rule 12(b)(6) of the North Carolina Rules of Civil Procedure when . . . some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Hooper v. Liberty Mut. Ins. Co.*, 84 N.C. App. 549, 551, 353 S.E.2d 248, 249-250 (1987) (citing *Forbis*, 301 N.C. at 701, 273 S.E.2d at 241 (1981)). Since plaintiff's complaint by implication alleges that Kassem knew about the dangers posed by the skylight, it discloses a fact which defeats her "hidden danger" claim.

[2] Plaintiff also argues that Westinghouse, as owner of the plant, had a nondelegable duty to Kassem's workers to see that they were provided a safe place to work. We have previously narrowed the scope of this issue by holding that a property owner is not required to provide an independent contractor's workers with a safe place to work unless the work being done is inherently dangerous.

> Unless the activity undertaken is inherently dangerous, an owner or occupier of land who hires an independent contractor is not required to provide employees of the independent contractor a safe place to work nor is he required to take proper safeguards

**BROWN v. FRIDAY SERVICES, INC.**

[119 N.C. App. 753 (1995)]

against dangers which may be incident to the work undertaken by the independent contractor.

*Cook v. Morrison*, 105 N.C. App. 509, 515, 413 S.E.2d 922, 926 (1992) (citing *Brown v. Texas Co.*, 237 N.C. 738, 741, 76 S.E.2d 45, 46-47 (1953)).

The question of whether roofing a building is an inherently dangerous activity was answered in the negative by this Court in *Olympic Products Co. v. Roof Systems, Inc.*, 88 N.C. App. 315, 334, 363 S.E.2d 367, 378, *disc. review denied*, 321 N.C. 744, 366 S.E.2d 862 (1988). However, the practice of judicially determining that certain activities, as a matter of law, are inherently dangerous while others are not, has since been rejected by our Supreme Court in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). In *Woodson*, the Supreme Court stated that "bright line rules and mathematical precision are not always compatible with discerning whether an activity is inherently dangerous." *Id.* at 353, 407 S.E.2d at 236. *Woodson*, therefore, compels us to determine whether the subject complaint sufficiently alleges that the roofing work done on the Westinghouse plant was inherently dangerous.

A brief review of plaintiff's complaint makes the resolution of this issue easy. Her complaint merely alleges that Westinghouse "failed to provide Kassem's employees a safe place to work." By relying on such bare bones pleadings, the complaint does not sufficiently allege that the roofing work performed on the Westinghouse plant was inherently dangerous. This assignment of error is without merit.

### B. FRIDAY

[3] Plaintiff next contends that the trial court erred by granting Friday Services' Rule 12(b)(6) motion to dismiss. Specifically, plaintiff argues that Friday Services engaged in intentional conduct which was substantially certain to cause serious injury or death to the decedent. We disagree.

Traditionally, the Workers' Compensation Act has provided the sole remedy for an employee who was injured on the job as a result of an accident. *See Regan v. Amerimark Bldg. Products, Inc.*, 118 N.C. App. 328, 454 S.E.2d 849 (1995). In *Woodson*, however, our Supreme Court held:

[W]hen an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to

employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

*Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228.

In *Powell v. S & G Prestress*, 114 N.C. App. 319, 442 S.E.2d 143 (1994), this Court stated that the type of misconduct exhibited in the following example satisfied the substantial certainty standard set forth in *Woodson*.

A throws a bomb into B's office for the purpose of killing B. A knows that C, B's stenographer, is in the office. A has no desire to injure C, but knows that this act is substantially certain to do so. C is injured by the explosion. A is subject to liability to C for an intentional tort.

*Powell*, 114 N.C. App. at 325, 442 S.E.2d at 147 (quoting Restatement (Second) of Torts § 8A illus. 1 (1965)). *Powell* further stated that substantial certainty requires more than a mere possibility or substantial probability of serious injury or death. *Powell* at 325, 442 S.E.2d at 147. We are constrained by *Powell's* adaptation of the Restatement's definition of substantial certainty. *In Re Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989) (A panel of the Court of Appeals is bound by a prior decision of another panel).

In the subject case, plaintiff alleges that Friday Services did not screen the decedent to determine if he had experience in roofing work at high elevations; did not properly train him; and failed to provide him with a safe place to work. Following *Powell*, we find that these allegations do not sufficiently state a claim that Friday Services engaged in misconduct knowing that it was substantially certain to cause serious injury or death. This assignment of error is meritless.

II.

[4] Lastly, plaintiff contends that the trial court erred by granting Kassem's Rule 12(b)(1) motion to dismiss on the grounds that her action was barred by the exclusivity provision of the Workers' Compensation Act. Specifically, plaintiff argues that the Workers' Compensation Act does not apply to Kassem because the decedent was employed by Friday Services, not Kassem. We disagree.

**BROWN v. FRIDAY SERVICES, INC.**

[119 N.C. App. 753 (1995)]

N.C. Gen. Stat. § 97-2(2) defines an employee as "every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written. . . ." This Court has recognized the "special employment" or "borrowed servant" doctrine which holds that under certain circumstances a person can be an employee of two different employers at the same time. *Henderson v. Manpower of Guilford County, Inc.,* 70 N.C. App. 408, 413, 319 S.E.2d 690, 693 (1984).

> . . . [T]he courts have long recognized that a general employee of one can also be the special employee of another while doing the latter's work and under his control [citation omitted] [a]nd it goes without saying that if a loaned servant is the borrower's servant also when doing the borrower's work and under his control, a servant especially hired for that very purpose is likewise.

*Id.* (citing *Leggette v. McCotter, Inc.,* 265 N.C. 617, 144 S.E.2d 849 (1965)).

The test for determining the liability of special employers in loaned employee cases is stated as follows:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has a right to control the details of the work. When all three of the conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

*Collins v. James Paul Edwards, Inc.,* 21 N.C. App. 455, 459, 204 S.E.2d 873, 876, *cert. denied,* 285 N.C. 589, 206 S.E.2d 862 (1974) (quoting 1A, Larson, *Workmen's Compensation Law,* § 48.00). Under this test and its typical application, . . . "joint employer status does not provide an injured plaintiff-employee with two recoveries; rather, it merely provides two potential sources of recovery." *Pinckney v. United States,* 671 F.Supp. 405, fn.2 (E.D.N.C. 1987). Therefore, once recovery is obtained under the statutory mechanism of workers' compensation, the plaintiff is barred from proceeding against either of his employers at common law. *Id.*

In the subject case, all three conditions of the "special employment" test, as outlined in *Collins,* have been met. First, an implied

contract existed between the decedent and Kassem since the decedent accepted the assignment from Friday Services and performed the work at the direction and under the supervision of Kassem. Furthermore, an express contract existed between Friday Services and Kassem for the use of the decedent's services. This contract provided that Kassem would pay Friday Services who, in turn, would pay the decedent. Second, Westinghouse hired Kassem to replace the roof. Thus, decedent was performing work for Kassem when fatally injured. And finally, Kassem controlled the details of decedent's work. In sum, we conclude that at the time of his death, decedent was performing work as a loaned servant on behalf of Kassem. Accordingly, all claims against Kassem are barred by the exclusivity provisions of the Workers' Compensation Act.

It should be noted that numerous other jurisdictions have considered whether a temporary employee is an employee of both the temporary agency and the temporary employer. The majority of these jurisdictions have also held that a temporary employee is an employee of both the temporary agency and the temporary employer, making workers' compensation the employee's exclusive remedy. *See, e.g., Evans v. Abbott Products, Inc.* 150 Ill. App.3d 845, 502 N.E.2d 341 (1986); *Hoffman v. National Machine Co.,* 113 Mich. App. 66, 317 N.W.2d 289 (1982); *English v. Lehigh County Authority,* 286 Pa. Super. 312, 428 A.2d 1343 (1981); *Whitehead v. Safeway Steel Products, Inc.* 304 Md. 67, 497 A.2d 803 (1985).

Affirmed.

Judges EAGLES and MARTIN, Mark D. concur.