TIMOTHY G. McCORKLE, Plaintiff v. NORTH POINT CHRYSLER JEEP, INC., Defendant and Third-Party Plaintiff v. LANDMARK BUILDERS OF THE TRIAD, INC., and C.W. ROBEY PAINT CO., INC., Third-Party Defendants

No. COA10-378

(Filed 21 December 2010)

**Negligence— duty of reasonable care—owner of construction site—shifted to contractor—hidden dangers**

The trial court did not err in granting summary judgment in favor of defendant in a negligence action. The duty of reasonable care, initially borne by defendant as owner and possessor of the construction site premises, had been shifted away from defendant at the time of plaintiff's accident such that defendant was not required to inspect the construction site for hidden dangers.

McCORKLE v. N. POINT CHRYSLER JEEP, INC.

[208 N.C. App. 711 (2010)]

Appeal by Plaintiff from order entered 9 February 2010 by Judge Edwin G. Wilson in Guilford County Superior Court. Heard in the Court of Appeals 26 October 2010.

*Ward Black Law, by S. Camille Payton, for Plaintiff.*

*Hill Evans Jordan & Beatty, PLLC, by Benjamin D. Ridings, for Defendant.*

STEPHENS, Judge.

*Facts*

In April 2006, Defendant North Point Chrysler Jeep, Inc., a car dealership in Winston-Salem, North Carolina, entered into a contract with Third-Party Defendant Landmark Builder of the Triad, Inc. ("Landmark"), whereby Landmark would serve as general contractor for construction of a new building on Defendant's property. The new building was to be connected to the dealership's existing service bay, which remained in use during the construction and was separated from the construction area by a temporary wall. Pursuant to the contract terms, Landmark was entirely responsible for the new building's construction, including job site safety and the supervision of any subcontractors needed to carry out the construction project.

In its role as general contractor, Landmark hired Third-Party Defendant C.W. Robey Painting & Decorating Co., Inc. ("Robey")[1] as a painting subcontractor; Plaintiff was employed by Robey as a painter and worked on the dealership construction project.

According to Plaintiff's deposition, in early January 2007, soon after Plaintiff began working on the dealership project, Plaintiff was walking down a stairway in the newly constructed building when a handrail broke; Plaintiff stumbled and twisted his back. The broken handrail that caused Plaintiff's injury was installed by the fabricator who supplied the handrail to Landmark. In discovery, Landmark stated that the railing was temporary and was supported by a temporary brace welded to the handrail.

On 25 February 2009, Plaintiff filed a complaint in Guilford County Superior Court, alleging that Defendant was negligent in failing to keep the construction site "in reasonably safe condition."

---

1. In the contract between Landmark and Robey, Robey's full name is "C.W. Robey Painting & Decorating Co., Inc." However, in the caption of Judge Wilson's order, as well as in the captions for nearly all other filings in the action, Robey's name is "C.W. Robey Paint Co., Inc."

Defendant filed its answer in May 2009, and, in June 2009, filed a third-party complaint against both Landmark and Robey.

Following discovery, Defendant filed its 13 January 2010 motion for summary judgment on Plaintiff's claim. On 9 February 2010, Judge Wilson granted Defendant's motion and dismissed Plaintiff's claim against Defendant with prejudice. Plaintiff filed his notice of appeal on 18 February 2010.

## Discussion

In a negligence action, to survive a motion for summary judgment, plaintiff must establish a *prima facie* case by showing: "(1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances." *Pike v. D.A. Fiore Constr. Servs., Inc.,* —— N.C. App. ——, ——, 689 S.E.2d 535, 537 9) (internal quotation marks omitted), *disc. review denied, dismissed as moot,* 363 N.C. 855, 694 S.E.2d 390 (2010). The determinative issue in this appeal is whether Defendant breached a duty owed to Plaintiff.

In his complaint, Plaintiff does not seek to hold Defendant vicariously liable for any breach by Landmark or Robey. Rather, Plaintiff seeks to hold Defendant liable for its own negligence in allegedly breaching its duty of reasonable care, which Plaintiff asserts that Defendant owed to Plaintiff based on Defendant's status as a landowner and Plaintiff's status as a lawful visitor.

It is well settled in North Carolina that an independent contractor and his employees who go upon the premises of an owner, at the owner's request, are lawful visitors and are owed a duty of due care. *Langley v. R.J. Reynolds Tobacco Co.,* 92 N.C. App. 327, 329, 374 S.E.2d 443, 445 (1988) (citing *Spivey v. Wilcox Co.,* 264 N.C. 387, 141 S.E.2d 808 (1965)), *disc. review denied,* 324 N.C. 433, 379 S.E.2d 241 (1989). Further, a subcontractor is considered a lawful visitor, and thus is owed the duty of reasonable care, with respect to both a general contractor and the landowner. *Id.* (noting that "both the general contractor and the owner of the premises owe to the subcontractor and its employees the duty of ordinary care").

The duty of due care includes " 'the obligation to exercise ordinary care to furnish reasonable protection against the consequences of *hidden dangers* known, or which ought to be known, to the pro-

prietor and not to the contractor or his servants.'" *Wellmon v. Hickory Constr. Co.*, 88 N.C. App. 76, 80, 362 S.E.2d 591, 593 (1987) (emphasis in original) (quoting *Deaton v. Bd. of Trustees of Elon College*, 226 N.C. 433, 438, 38 S.E.2d 561, 564-65 (1946)), *disc. review denied*, 322 N.C. 115, 367 S.E.2d 921 (1988). This duty also requires a landowner, as well as a general contractor, to make a reasonable inspection to ascertain the existence of hidden dangers. *Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 161, 516 S.E.2d 643, 645-46 (citing *Williams v. Stores Co.*, 209 N.C. 591, 596, 184 S.E. 496, 499 (1936)), *cert. denied*, 351 N.C. 107, 541 S.E.2d 148 (1999).[2]

While Plaintiff argues that Defendant, as a landowner, owed to Plaintiff the duty of reasonable care, which includes the duty to make a reasonable inspection of the construction site, Defendant responds that its duty as landowner did not extend to the *work* undertaken by independent contractors such that Defendant had no duty to inspect the construction site. In support of this argument, Defendant cites *Cook v. Morrison*, 105 N.C. App. 509, 413 S.E.2d 922 (1992), for its holding that "[the] general rules on the tort liability of owners and occupiers of land to [independent contractors] . . . do not apply to the actual work undertaken by independent contractors and their employees." *Id.* at 515, 413 S.E.2d at 926.

In *Cook*, plaintiff-executrix sued defendant-landowner for the wrongful death of plaintiff's husband, an independent contractor with respect to defendant who was killed on defendant's land while working in a trench that collapsed. *Id.* at 512, 413 S.E.2d at 924. Regarding plaintiff's allegation of defendant's negligence based on the theory of breach of duty to an invitee, this Court held that an owner or occupier of land who hires an independent contractor is not required to take reasonable precautions against "dangers which may be incident to the work undertaken by the independent contractor." *Id.* at 515, 413 S.E.2d at 926 (citing 62 Am. Jur. 2d *Premises Liability* § 457 (1990)). Accordingly, whether the duty of reasonable care applies depends on whether or not the danger at issue may be categorized as "incident to the work undertaken" by the independent contractor.[3] *Id.*

---

2. We note that these cases were decided prior to *Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998), *reh'g denied*, 350 N.C. 108, 533 S.E.2d 467 (1999), and applied the now-defunct tripartite visitor distinction. However, because independent contractors, as invitees/lawful visitors, are afforded the same standard of care post-*Nelson* as they were pre-*Nelson*, *i.e.*, ordinary care, we conclude that the explications of the standard of care from these cases are still relevant.

3. *Cook* holds that this exception will not apply to work undertaken by an independent contractor that is "inherently dangerous." Although the "inherently dangerous"

McCORKLE v. N. POINT CHRYSLER JEEP, INC.

[208 N.C. App. 711 (2010)]

In determining whether the "incident to the work undertaken" exception should apply in this case, it is helpful to understand the reason and purpose for creating and applying such an exception. This caveat that liability of owners and occupiers of land does not extend to the actual work undertaken by independent contractors and their employees has been recognized and accepted by numerous other jurisdictions, as well as by scholars. *See Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890, 894 (Wyo. 1986) (holding that although generally an independent contractor is an invitee of a premises owner, "[a]n owner is not obligated to protect the employees of an independent contractor from hazards which are incidental to, or part of, the very work the contractor was hired to perform"); *Dawson v. Bunker Hill Plaza Assocs.*, 289 N.J. Super. 309, 317-18, 673 A.2d 847, 851 (App. Div. 1996) (noting that although, "[a]s a general rule, a landowner has a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers[,] . . . an owner is not responsible for harm which occurs to an employee as a result of the very work which the employee was hired to perform"); *Smart v. Chrysler Corp.*, 991 S.W.2d 737, 743 (Mo. Ct. App. 1999) (noting the exception to the rule that "[a]n employee of an independent contractor who has permission to use a landowner's premises is [] an invitee" that is created when a landowner "relinquishes possession and control of the premises to an independent contractor during a period of construction"); *see also* 13 Am. Jur. 2d *Building and Construction Contracts* § 136 (2010).

The oft-stated reason for the exception is that if a landowner relinquishes control and possession of property to a contractor, the duty of care, and the concomitant liability for breach of that duty, are also relinquished and should shift to the independent contractor who is exercising control and possession.[4] *Jones*, 718 P.2d at 895 (citing an

---

analysis may apply to premises liability, *Cook*'s application of this analysis is paraphrased from *Brown v. Texas Co.*, 237 N.C. 738, 741, 76 S.E.2d 45, 46-47 (1953), which is a case dealing with master-servant liability and the independent contractor exception, and not with premises liability. Regardless, painting and construction are not inherently dangerous; thus, the analysis is irrelevant here. *See Woodson v. Rowland*, 329 N.C. 330, 353, 407 S.E.2d 222, 235 (1991) ("[T]his Court has held as a matter of law that certain activities resulting in injury are not inherently dangerous. These activities include . . . building construction. *Vogh v. F.C. Geer Co.*, 171 N.C. 672, 88 S.E. 874.").

4. The reason for the exception has also been stated in terms of assumption of the risk. *See Wolczak v. Nat'l Elec. Prod. Corp.*, 66 N.J. Super. 64, 75-76, 168 A.2d 412, 417 (App. Div. 1961); *but see Jones*, 718 P.2d 890, 895 ("But the assumption-of-risk rationale does not apply very well when a contractor's employee, rather than the contractor, is injured. . . . He [(the contractor's employee)] does not voluntarily assume the risks of the job site.")

owner's "lack of control over the job site" as the reason for the exception); 13 Am. Jur. 2d *Building and Construction Contracts* § 136 ("When a landowner relinquishes the possession and control of the premises to an independent contractor during the period of construction, the independent contractor rather than the landowner, is the possessor of the land and the duty to use reasonable and ordinary care to prevent injury shifts to the independent contractor."). However, the reasoning for the exception, and thus the exception itself, extends only as far as the independent contractor, and not the landowner, is in control of the hazard or danger. *Jones*, 718 P.2d at 894 ("Because the exception is based on the owner's delegation of control to the contractor, it should not apply when the owner maintains control over the hazard that causes the harm."); *Smart*, 991 S.W.2d at 743 (noting that "the duty will not shift to the independent contractor if the landowner controls either the physical activities of the employees of the independent contractor or the details of the manner in which the work is done").

In this case, Defendant contracted with Landmark so that possession and control of the construction site were vested solely with Landmark. Under the terms of the contract, Landmark was to "supervise and direct the [w]ork, using [Landmark's] best skill and attention." Landmark was "solely responsible for and [had] control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the [w]ork under the Contract[.]" Landmark was further charged with responsibility for "inspection of portions of [w]ork already performed to determine that such portions are in proper condition to receive subsequent [w]ork."

With respect to safety, Landmark was responsible "for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the [c]ontract." Further, Landmark was to "take reasonable precautions for safety of, and [] provide reasonable protection to prevent damage, injury or loss to" "employees . . . and other persons who may be affected thereby" and to "the [w]ork and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of [Landmark] or [Landmark's] [s]ubcontractors or [s]ub-subcontractors[.]"

Based on the foregoing, it is clear that, contractually, Landmark was in control of the construction site. Further, the only evidence presented by Plaintiff to indicate that Defendant actually exercised

any control over the construction was in Plaintiff's affidavit, in which Plaintiff stated that, at sometime before the accident, he observed a person, who was reportedly an executive of Defendant, on the stairway on which Plaintiff was injured. However, the mere fact that an employee of Defendant visited or toured the construction site is insufficient to show that Defendant retained any control of the construction site. Accordingly, we conclude that Defendant was not in possession and control of the construction site such that it would be improvident to impose the duty of reasonable care and inspection on Defendant. Were we to impose this duty on Defendant based on nothing more than Defendant's status as passive owner of the premises, regardless of Defendant's possession or control of the property, we would impose upon all landowners—from those who endeavor to have built a swingset, to those who endeavor to have built a skyscraper—the duty to make a reasonable inspection for hidden dangers on a construction site at all stages in the construction process, even where the landowner has contracted with a party possessed of superior knowledge, experience, and skill, as here. For obvious reasons, we decline to impose such a duty.

Accordingly, we hold that the duty of reasonable care, initially borne by Defendant as owner and possessor of the construction site premises, had been shifted away from Defendant at the time of Plaintiff's accident such that Defendant was not required to inspect the construction site for hidden dangers. We thus conclude that Defendant did not owe a duty of reasonable care to Plaintiff and that summary judgment was properly entered for Defendant.

The judgment of the trial court is

AFFIRMED.

Chief Judge MARTIN and Judge STROUD concur.